THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| VANCE DOTSON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | 1:25-cv-03326-MHC-CMS |
| | ) | |
| TRANS UNION, LLC, and EQUIFAX | ) | |
| INFORMATION SERVICES, LLC, | ) | |
| Defendants. | ) | |
| | ) | |

---

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

---

## INTRODUCTION

COMES NOW the Plaintiff Vance Dotson ("Mr. Dotson" or "Plaintiff"), an individual consumer, by Counsel, and for his Complaint against Defendants, Trans Union, LLC and Equifax Information Services, LLC (collectively referred to as "CRAs"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681-1681x et seq.

1

2. Inaccuracies and errors plague consumer reporting. Estimates of serious errors range from 3 to 25%. The most recent and definitive FTC study on errors and credit reports found that 21% of consumers had verified errors in their credit reports, 13% had errors that had affected their credit scores, and 5% had errors serious enough to be denied or pay more for credit. *See* FTC Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003 (2012).

3. This means that 10 million Americans face serious errors in their credit reports that could result in them being denied or paying more for credit.

4. To give consumers the opportunity to verify the accuracy of data maintained by CRAs, the FCRA requires CRAs to disclose certain information to the consumer upon request. *See* 15 U.S.C. § 1681g; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2213 (2021) ("As the plaintiff's note, the disclosure and summary-of-rights requirements are designed to protect consumers interest in learning of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties.")

## JURISDICTION AND VENUE

5. Jurisdiction of this court arises under 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

2

6. Venue in this District is proper in that the Defendant regularly conducts business in the State of Georgia.

## III.  PARTIES

7. Plaintiff Vance Dotson is a natural person residing in Oklahoma, OK.

8. Plaintiff Vance Dotson is a consumer as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a, (b) and (c).

9. Upon information and belief, Trans Union, LLC is an Illinois corporation duly authorized and qualified to do business in the State of Georgia.

10. Trans Union is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f) and it disburses consumer reports to third parties for monetary compensation.

11. Upon information and belief, Equifax Information Services, LLC is a Georgia corporation duly authorized and qualified to do business in the State of Georgia.

12. Equifax is a "credit reporting agency," as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## IV.   FACTS OF THE COMPLAINT

<u>Equifax</u>

13. On February 7, 2025, Mr. Dotson obtained a copy of his consumer credit disclosure from Equifax Information Services, LLC.

14. Equifax was also required under <u>15 U.S.C. § 1681g(a)</u> to clearly and accurately disclose to Mr. Dotson all the information in his file, subject to the same limited exception regarding truncation of the Social Security number.

15. Despite this statutory requirement, Equifax's disclosure failed to include a substantial amount of information actually present in Mr. Dotson's credit file.

16. The disclosure failed to divulge full account numbers for each tradeline.

17. On or about February 8, 2025, Mr. Dotson submitted a detailed written dispute to Equifax, identifying numerous instances of incomplete information, inaccuracies, and omissions associated with several accounts and requesting appropriate corrections.

18. Mr. Dotson's dispute letter plainly identified and described the disputed Accounts.

19. The nature of the errors and omissions was expressly stated in the dispute, enabling Equifax to understand precisely what required correction.

20. On or about March 30, 2025, Mr. Dotson obtained an updated copy of his Equifax consumer disclosure via www.annualcreditreport.com.

21. The subsequent disclosure failed to divulge full account numbers for each tradeline.

22. This subsequent disclosure continued to reflect substantial errors and omissions in his credit file.

23. These errors and omissions were numerous and included, but were not limited to, missing full account numbers for the majority of the accounts and the following:

24. <u>SYWMC/CBNA</u>:

   o The payment history is incomplete and inconsistent. The account was opened in November 2014, but the tradeline only reflects payment history from April 2019 until its reported closure in July 2022, omitting more than four years of earlier history.

   o Thereafter, from November 2022 to the present, the tradeline reflects a charge-off ("CO") status. However, despite being reported as charged off, the tradeline continues to list an outstanding balance beginning in March 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable history while simultaneously presenting conflicting account information that is misleading and inaccurate.

   o Equifax possesses more information regarding this account than it disclosed.

25. <u>JPMCB Card Services</u>:

   <u>Account 4496</u>.

o The payment history is incomplete and inconsistent. The account was opened in October 2013, yet the tradeline only reflects payment history from April 2019 through October 2021, omitting nearly six years of prior history.

o From November 2021 to the present, the tradeline reports a charge-off ("CO") status, with additional gaps from January through July 2023 listed as "ND" (No Data). Despite the charge-off, the tradeline continues to show an outstanding balance beginning in September 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

Account 6013.

o The payment history is incomplete and inconsistent. The account was opened in October 2013, yet the tradeline only reflects payment history from July 2018 through July 2021, omitting nearly three years of prior history.

o From August 2021 to the present, the tradeline reports a charge-off ("CO") status, with additional gaps from January through July 2023 listed as "ND" (No Data). Despite the charge-off, the tradeline continues to show an outstanding balance beginning in August 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

o Equifax possesses more information regarding these accounts than it disclosed.

26. <u>Discover Bank</u>:

o The payment history is incomplete and inconsistent. The account was opened in May 2017, yet the tradeline only reflects payment history from April 2019 through January 2023, omitting nearly two years of prior history.

o From August 2023 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in March 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

o Equifax possesses more information regarding this account than it disclosed.

27. <u>Bank of America</u>:

o The payment history is incomplete and inconsistent. The account was opened in June 2017, yet the tradeline only reflects payment history from April 2019 through September 2021, omitting nearly two years of prior history.

o From October 2021 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in March 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further

7

compromising the accuracy and completeness of the information reported.

o   Equifax possesses more information regarding this account than it disclosed.

28. <u>Communications FCU MC</u>:

o   The payment history is incomplete and inconsistent. The account was opened in October 2013, yet the tradeline only reflects payment history from April 2019 through March 2023 2021, omitting nearly six years of prior history.

o   From April 2023 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in April 2023 through the present. This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o   Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

o   Equifax possesses more information regarding this account than it disclosed.

29. <u>JPMCB Card Services</u>:

o   The payment history is incomplete and inconsistent. The account was opened in July 2013, yet the tradeline only reflects payment history from April 2019 through July 2021, omitting nearly six years of prior history.

o   From August 2021 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in September 2023 through the present.

o   The tradeline displays "ND" (No Data) from February 2023 through August 2023, further contributing to the incompleteness and

inconsistency of the account record. These omissions and contradictions deprive the consumer of years of potentially favorable history while presenting misleading and conflicting information.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

o Equifax possesses more information regarding this account than it disclosed.

30. Navy Federal Credit Union:

o The payment history is incomplete and inconsistent. The account was opened in May 2017, yet the tradeline only reflects payment history from July 2018 through March 2022, omitting a year of history.

o From April 2022 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in March 2023 through the present.

o The tradeline displays "ND" (No Data) from October through November 2022, further contributing to the incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of years of potentially favorable history while presenting misleading and conflicting information.

o Equifax possesses more information regarding this account than it disclosed.

31. Citicards CBNA:

o The payment history is incomplete and inconsistent. The account was opened in November 2014, yet the tradeline only reflects payment history from April 2019 through September 2022, omitting nearly five years of prior history.

o From December 2022 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in April 2023 through the present. This reporting is both incomplete and internally

inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

o The tradeline displays "ND" (No Data) from October through November 2022, further contributing to the incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of years of potentially favorable history while presenting misleading and conflicting information.

o Equifax possesses more information regarding this account than it disclosed.

32. <u>Tinker Federal Credit Union</u>:

o The payment history is incomplete and inconsistent. The account was opened in May 2017, yet the tradeline only reflects payment history from April 2019 through September 2021, omitting nearly two years of prior history.

o The tradeline states that the balance was charged off, yet it continues to reflect an outstanding balance, fails to include a Date Closed, and does not display a "CO" designation in the payment history. These inconsistencies render the tradeline incomplete, inaccurate, and misleading, as it fails to clearly and consistently report the account's true status.

o Missing account closure date. Although the account is reported as charged off, the tradeline fails to include a Date Closed, further compromising the accuracy and completeness of the information reported.

o Equifax possesses more information regarding this account than it disclosed.

33. <u>Cortrust Bank</u>:

o The payment history is incomplete and inconsistent. The account was opened in August 2017, yet the tradeline only reflects payment history from July 2018 through May 2021, omitting nearly a year of prior history.

- From June 2021 through December 2024 (with the exception of June and July 2023, which display "ND" (No Data Available)), the tradeline reflects a charge-off ("CO") status.

- Despite this designation, the tradeline continues to report an outstanding balance beginning in June 2023 through the present. This reporting is both incomplete and internally inconsistent, as it omits years of potentially favorable payment history while simultaneously presenting contradictory and misleading information regarding the account's true status.

- Equifax possesses more information regarding this account than it disclosed.

34. <u>Wells Fargo Card Serv</u>:

- The payment history is incomplete and confusing. Although the account was opened in May 2012, the tradeline only reflects payment history from April 2019 through June 2024. This is inconsistent and confusing because the tradeline simultaneously lists an account closure date of July 2021, yet continues to report payment history beyond that date.

- The payment history further reflects "ND" (No Data) entries from February 2022 through December 2023, contributing to the overall incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of potentially favorable history while presenting misleading and inaccurate information.

- Equifax possesses more information regarding this account than it disclosed.

<u>Trans Union</u>

35. On February 6, 2025, Mr. Dotson obtained a copy of his consumer credit disclosure from Trans Union, LLC.

11

36. Similarly, TransUnion was required under 15 U.S.C. § 1681g(a) to provide a complete, clear, and accurate disclosure of all information in Mr. Dotson's file, with the same limited exception regarding Social Security number truncation.

37. TransUnion's disclosure failed to include key information from Mr. Dotson's credit file.

38. The disclosure failed to divulge full account numbers for each tradeline.

39. The inaccuracies included erroneous data, incomplete payment histories, and missing source information.

40. On or about February 8, 2025, Mr. Dotson sent TransUnion a formal dispute letter, identifying specific accounts with multiple errors and requesting that corrective action be taken.

41. The disputed Accounts were clearly listed and explained in the correspondence.

42. Mr. Dotson explicitly detailed the inaccuracies and omissions, leaving no ambiguity as to what information was being challenged.

43. On or about March 15, 2025, Mr. Dotson again accessed his TransUnion consumer disclosure through www.annualcreditreport.com.

44. This subsequent disclosure continued to reflect substantial errors and omissions in his credit file.

45. The subsequent disclosure failed to divulge full account numbers for each

tradeline.

46. These errors and omissions were numerous and included, but were not

limited to, missing full account numbers for the majority of the accounts

and the following:

47. <u>American Express:</u>

o Incomplete and inconsistent payment history. Although the account
was charged off in 2021, the tradeline continues to report both a
current balance and a past due amount. This reporting is internally
inconsistent, inaccurate, and misleading, as a charged-off account
should not simultaneously reflect an active balance and delinquency.

o Trans Union possesses more information regarding this account than
it disclosed.

48. <u>Bank of America:</u>

o Incomplete and inconsistent payment history. Although the account
was charged off in 2021, the tradeline continues to report both a
current balance and a past due amount. This reporting is internally
inconsistent, inaccurate, and misleading, as a charged-off account
should not simultaneously reflect an active balance and delinquency.

o Trans Union possesses more information regarding this account than
it disclosed.

49. <u>Continental Fin Co:</u>

o Incomplete payment history. Tradeline displays "X" for twenty-
seven of the months the tradeline reports.

o Trans Union possesses more information regarding this account than
it disclosed.

50. <u>Cortrust Bank</u>:

   o Incomplete and inconsistent payment history. The tradeline displays "X" for June and July 2023, November 2024, and January 2025, leaving gaps in the reporting.

   o Although the account was charged off in 2021, the tradeline continues to list both a current balance and a past due amount. This reporting is internally inconsistent and misleading, as it fails to clearly reflect the account's true status.

   o Trans Union possesses more information regarding this account than it disclosed.

51. <u>Citicards CBNA</u>:

   o The payment history is incomplete and inconsistent. The account was opened in November 2014, yet the tradeline only reflects payment history from May 2018 through September 2022, omitting nearly four years of prior history.

   o From December 2022 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance.  This reporting is both incomplete and internally inconsistent, depriving the consumer of years of potentially favorable payment history while presenting contradictory and misleading information.

   o The tradeline displays "ND" (No Data) from October through November 2022, further contributing to the incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of years of potentially favorable history while presenting misleading and conflicting information.

   o Trans Union possesses more information regarding this account than it disclosed.

52. <u>Wells Fargo Card Serv</u>:

   o The payment history is incomplete and confusing. Although the account was opened in May 2012, the tradeline only reflects payment history from May 2016 through February 2023. This is inconsistent

and confusing because the tradeline simultaneously lists an account closure date of July 2021, yet continues to report payment history beyond that date.

o The payment history further reflects "ND" (No Data) entries from February 2019 and March 2019, contributing to the overall incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of potentially favorable history while presenting misleading and inaccurate information.

o Trans Union possesses more information regarding this account than it disclosed.

53. <u>Navy Federal Credit Union</u>:

o The payment history is incomplete and inconsistent. The account was opened in May 2017, yet the tradeline only reflects payment history from May 2018 through March 2022, omitting a year of history.

o From April 2022 to the present, the tradeline reports a charge-off ("CO") status. Despite the charge-off, the tradeline continues to show an outstanding balance beginning in March 2023 through the present.

o The tradeline displays "ND" (No Data Available) from October through November 2022, further contributing to the incompleteness and inconsistency of the account record. These omissions and contradictions deprive the consumer of years of potentially favorable history while presenting misleading and conflicting information.

o Trans Union possesses more information regarding this account than it disclosed.

54. Under <u>15 U.S.C. § 1681g(a)</u>, upon receipt of Mr. Dotson's request, all Defendants were legally obligated to provide Mr. Dotson with a complete and accurate disclosure of all information in his credit files at the time of his request.

55. Defendants provided an electronic copy of Mr. Dotson's Consumer Disclosure via www.annualcreditreport.com.

56. Rather than comply with the FCRA, each Defendant knowingly and intentionally failed to disclose all of the information in Mr. Dotson's credit file.

57. Each Defendant failed to disclose full account numbers.

58. Each Defendant failed to properly investigate Mr. Dotson's disputes.

59. These failures and omissions appear to have been driven by a desire to reduce operating costs and increase profitability.

60. Accordingly, Equifax's and Trans Union's violations of the FCRA were willful.

61. Mr. Dotson is entitled to receive a complete, accurate, and transparent disclosure of his credit file from each CRA upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately. *See* 15 U.S.C. § 1681j.

62. By failing to meet this requirement, Defendants deprived Mr. Dotson of a right expressly granted by federal law.

63. These violations were willful, not negligent, and were carried out through systemic procedures that prioritized internal efficiency over the accuracy

and completeness of consumer disclosures. Defendants' practices suggest

an institutional disregard for their statutory obligations under the FCRA.

64. Defendants' actions and inactions caused significant harm to Mr. Dotson

in numerous ways, including but not limited to:

- o Preventing him from identifying and correcting errors in his credit file;

- o Obstructing his statutory right to dispute inaccurate or incomplete information;

- o Depriving him of favorable credit information;

- o Subjecting him to frustration, confusion, and unnecessary delay;

- o Increasing his risk of credit denials and exposure to unfavorable credit terms;

- o Damaging his reputation and financial standing;

- o Causing his emotional distress, anxiety, and embarrassment;

- o Forcing him to waste substantial time and resources attempting to remedy the inaccuracies;

- o Prolonged publication of false and/or incomplete information; and

- o Depriving him of the full exercise of his legal rights under the Fair Credit Reporting Act.

## CAUSES OF ACTION

65. This suit is based upon the Defendants' violations of the Fair Credit

Reporting Act.

66. All causes of action were the producing causes of damages, which Mr.

Dotson suffered.

## FIRST CLAIM FOR RELIEF
### 15 U.S.C. § 1681g

<u>67</u>. Plaintiff incorporates by reference each of the allegations set forth in the

preceding paragraphs.

68. Defendants violated the FCRA.

69. Defendants' violations include, but are not limited to, the following:

> Defendants violated <u>15 U.S.C. § 1681g</u> by failing to clearly and accurately disclose all of the information in Plaintiff's consumer file at the time of the request.

> Defendants also violated <u>15 U.S.C. § 1681g</u> by failing to disclose the sources of the information contained in the consumer disclosure.

70. Trans Union, and Equifax's conduct in violating the FCRA was willful,

rendering them liable to Plaintiff for actual damages, statutory damages,

punitive damages, costs, and attorney's fees in an amount to be determined

pursuant to <u>15 U.S.C. § 1681n</u>.

71. In the alternative, they were negligent, which entitles Plaintiff to recovery

under <u>15 U.S.C. § 1681o</u>.

## SECOND CLAIM FOR RELIEF
### 15 U.S.C. § 1681i

<u>72</u>. Plaintiff incorporates by reference each of the allegations set forth in the

preceding paragraphs.

73. Trans Union, and Equifax violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of § 1681i(a)(5)(A).

74. As a result of Trans Union and Equifax's conduct, Plaintiff suffered concrete and particularized harm, including, without limitation: loss of credit, credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress.

75. Trans Union and Equifax's conduct in violating § 1681i was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

76. In the alternative, Trans Union and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## THIRD CLAIM FOR RELIEF
### 15 U.S.C. § 1681e(b)

77. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

78. Trans Union and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

79. Trans Union and Equifax's conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

80. In the alternative, they were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vance Dotson respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendants Trans Union, LLC and Equifax Information Services, LLC, for the following:

a. Judgment that Defendants violated the FCRA;

20

b.  Actual or Statutory damages pursuant to 15 U.S.C. § 1681n and 15

   U.S.C. § 1681o;

c.  Punitive and/or statutory damages pursuant to 15 U.S.C. § 1681n and

   15 U.S.C. § 1681o;

d.  Attorney's Fees, Costs, and Expenses incurred in this action pursuant

   to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

e.  For such other and further relief as the Court may deem just and

   proper.

                          Respectfully submitted:

                          **Law By JW, LLC**
                          1590 Jonesboro Rd. SE #6839
                          Atlanta, GA 30315
                          Phone: (832) 422-6362
                          jeff@lawbyjw.com


By: _____
        JEFFREY A. WILSON

21